UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>DAVID CROCKETT HAVNER )<br>)<br>)<br>Defendant. ) | No. 4:22-cr-23-TRM-SKL |

**REPORT & RECOMMENDATION**

Before the Court is a motion to suppress filed by Defendant David Crockett Havner [Doc. 45], which was referred for a report and recommendation by standing order pursuant to 28 U.S.C. § 636(b). Now alleging a violation of his Fourth and Fifth Amendment rights, Defendant seeks to suppress all evidence resulting from the warrantless search of his vehicle. In its opposition to the motion, the Government argues Defendant's rights were not violated and the search is supported by the requisite probable cause [Doc. 47]. After the evidentiary hearing on the motion held May 17, 2023, the parties filed post-hearing briefs to refine their arguments to address the evidence [Doc. 56 & Doc. 59]. This matter is now ripe.

For the reasons stated below, I find the Government has met its burden to prove the warrantless search did not violate Defendant's constitutional rights.

I.     **FACTUAL BACKGROUND**

The Government called former 12th and 31st Judicial District Drug and Violent Crime Task

Force ("DTF") agent Dustin Brisher ("Brisher"),[1] and Chad Johnson, the current director of the DTF, as its only witnesses. Defendant called William Dippillo, an investigator with Federal Defender Services of East Tennessee, Inc. as his only witness. The collective evidence credibly establishes the following pertinent facts.[2]

On March 4, 2022, Brisher conducted a traffic stop of Defendant for failure to wear a seatbelt. Defendant admitted the violation. Based on his experience and training, Brisher concluded Defendant was abnormally nervous during this brief conversation. Brisher concluded Defendant was abnormally nervous because Defendant's hands were shaking, a vein in Defendant's neck was throbbing, and later, after Defendant was out of the vehicle, Defendant was self-hugging. Brisher agreed he did not include these details in his Report of Investigation (Government's Exhibit 1), although he did mention Defendant's nervousness in the report.

As Brisher thought Defendant was abnormally nervous, he asked Defendant to step out of the vehicle and to the front of Brisher's patrol car. To calm Defendant, Brisher told Defendant that he would only give Defendant a warning, not a citation, for the seatbelt violation if Defendant's driver's license checked out and he was cleared through NCIC. Despite this assurance that he would only receive a warning citation from Brisher, Defendant continued to be more nervous than other persons in routine traffic stops.

Brisher asked Defendant for consent to search the car while another officer, who arrived very quickly after the stop was initiated, began the process of conducting the records check. Defendant denied the request for consent, so Brisher deployed his drug-detection dog, Bain, in an

---

[1] Brisher is currently a lieutenant of corrections for the Texas Department of Criminal Justice.

[2] There are no body or patrol car camera or audio recordings of the events at issue.

open-air sniff around the outside of Defendant's vehicle. As Bain was in Brisher's patrol car, Bain was deployed within minutes of the stop and before the conclusion of the records check.

During Bain's deployment, as Bain approached the rear area of the vehicle, Bain communicated an alert to Brisher by showing a change in behavior near the rear passenger side of the vehicle. Bain changed his behavior by whipping his head to the side and "coning" the air. Bain then showed a positive indication by sitting close to the seam of the rear passenger door. Brisher placed Bain back in the patrol car and returned to talk to Defendant.

While the records check was still on-going, Brisher told Defendant that Bain had alerted on the vehicle and asked Defendant if he had anything illegal in the vehicle. In response, Defendant froze, then looked away and did not respond. Brisher then told Defendant that Bain had alerted on the vehicle and that his dog was not going to lie to him. Brisher again asked if Defendant had anything illegal in the vehicle and Defendant admitted he had a few jars of marijuana in the vehicle.

After Defendant admitted having marijuana in his vehicle, Brisher searched Defendant's person and found a plastic bag containing five bags of suspected methamphetamine in Defendant's right pants pocket, which was later confirmed by lab analysis to be a distribution amount of methamphetamine (actual).[3] Defendant was then placed in handcuffs. At that point, Brisher searched Defendant's vehicle where he located a firearm and ammunition and a distribution amount of marijuana in several different containers under the driver's seat. Defendant was

---

[3] Defendant does not directly contest this frisk or search of his person; instead, he focuses on probable cause for the vehicle search. However, the same probable cause that supports a search of the vehicle also supports a frisk or search of Defendant's person so the issue need not be belabored here. Moreover, while the methamphetamine found in Defendant's pocket would certainly add to the probable cause for the vehicle search, it is not necessary to address it since it was not clearly addressed in the context of probable cause for the vehicle search by either party.

3

arrested on charges related to the drugs and gun. Brisher did not issue a warning for failure to wear a seatbelt. A tow truck was called for Defendant's vehicle. Sometime after his arrest, Defendant allegedly gave a Mirandized confession about the methamphetamine and firearm.

Much of the testimony and argument related to Bain's training and certification. Brisher, who is not a certified dog trainer or handler, indicated he trained Bain prior to Bain's and his (as handler) receipt of a Detector Dog Certification from the National Narcotic Detector Dog Association, Inc. ("NNDDA") on February 16, 2019.[4] Bain passed the 2019 NNDDA Standard tests for the detection of marijuana, cocaine, heroin, and methamphetamines.

Regarding training before or during the pertinent time period, Brisher trained Bain three to four times per week by hiding cocaine, methamphetamine, marijuana, and heroin in different places inside buildings, in vehicles, and outside. Brisher also placed distraction odors, like body spray, food items, Bain's dog food, and dog hair in those areas to challenge Bain's narcotics detection skills. Brisher also trained Bain in distraction situations such as active shooting at gun ranges, rain, snow, and around other dogs. Brisher testified Bain's performance was near perfect in all these situations and that Bain never had a false alert in a controlled setting. In the field, Bain only alerted once when drugs were not found and the occupants did not admit to the presence of an odor of drugs. Brisher lost his/Bain's training and certification records when he moved to Texas for his current job.

---

[4] This Court has previously recognized the unique olfactory capabilities of canines and that "[t]he NNDDA is an organization comprised of approximately 2500–3000 dog handler members. The board of directors sets the requirements each handler must meet for certification. Certification must be completed annually. The requirements for certification, a detailed description of the certification process and policies regarding canine certification can be found at National Narcotic Detector Dog Association Home Page, *http:// www.nndda.org* (last visited Aug. 24, 2006)." *United States v. Howard*, 448 F. Supp. 2d 889, 894 n.1 (E.D. Tenn. 2006), *aff'd,* 621 F.3d 433 (6th Cir. 2010).

4

Brisher testified he had Bain's NNDDA certification renewed in March of 2020 at the beginning of COVID-19. Brisher received a certificate, but it is among the documents lost during the move to Texas. Brisher also testified Bain's certification was renewed by NNDDA on April 12, 2021. Although all training and certification records from NNDDA were subpoenaed, only Government's Exhibits 2 and 3 regarding the initial certification in 2019 were produced by NNDDA and they are the only documents presented as evidence concerning Bain's certification and training prior to the March 4, 2022 stop. According to these exhibits, Bain passed his 2019 certification test on a pass/fail basis and was certified by NNDDA. While the exhibits support Brisher's testimony regarding Bain's certification in 2019, Brisher could not explain why NNDDA had no record of the 2020 recertification. No testimony was elicited to indicate whether a payment for the alleged 2020 renewal of Bain's NNDDA certification was made by the DTF to NNDDA. Johnson called someone at NNDDA who reportedly said Bain was recertified on April 12, 2021, but no certification was issued by NNDDA because NNDDA did not receive payment for the 2021 recertification. Although the reason for the lack of payment is unknown, Johnson confirmed the DTF records do not reflect payment was made to NNDDA for any renewal of Bain's certificate in 2021.

Finally, Brisher's reports of the stop do not mention that Defendant had his dog in the vehicle. Testimony and a photograph of Defendant's dog (Defendant's Exhibit 2) indicate it is a big, pit-bull type of dog. Some testimony supports the dog was growling and that it was perceived as dangerous by at least one officer who arrived at the scene. There was, however, no evidence elicited that Bain was distracted from his "work" due to any aggressive barking/growling by Defendant's dog. As argued by Defendant, because there are no records addressing Bain's training, there are no records of training related to distractions such as an aggressive dog distraction

5

in the field. Before the search took place, Defendant's dog was removed by a friend or family member who arrived at the scene shortly after the stop.

## II. STANDARDS

The Fourth Amendment, applicable to the states through the Fourteenth Amendment, protects citizens against unreasonable searches or seizures. U.S. Const. amend. IV; *Elkins v. United States*, 364 U.S. 206, 222 (1960) ("[W]hat the Constitution forbids is not all searches and seizures, but unreasonable searches and seizures.").[5] The Fourth Amendment curtails what officers may do during a lawful traffic stop. *See Illinois v. Caballes*, 543 U.S. 405, 407 (2005). Under the Fourth Amendment, a search is reasonable when it is supported by a warrant or an exception to the warrant requirement. *Katz v. United States*, 389 U.S. 347, 357 (1967); *United States v. Carter*, 378 F.3d 584, 587 (6th Cir. 2004) (en banc). One such exception is the automobile exception, by which police may conduct a warrantless search of a readily mobile motor vehicle if probable cause exists to believe the vehicle contains contraband or other evidence of a crime. *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996); *United States v. Johnson*, 707 F.3d 655, 658 (6th Cir. 2013).

The Fifth Amendment protects a person from being compelled to incriminate himself. U.S. Const. amend. V. A suspect who is in police custody and subject to interrogation must be given *Miranda* warnings against self-incrimination; if no *Miranda* warnings are given, then the incriminating statements elicited cannot be admitted at trial. *Dickerson v. United States*, 530 U.S.

---

[5] A defendant has the burden of establishing a legitimate expectation of privacy to assert a Fourth Amendment right. *United States v. Smith*, 263 F.3d 571, 582 (6th Cir. 2001). As a preliminary matter, the Government does not contest that Defendant had a legitimate expectation of privacy with respect to all issues raised in his motion.

428, 431 (2000).[6] The Fifth Amendment and the Due Process Clause of the Fourteenth Amendment also require that a statement or confession be voluntary to be admitted into evidence. *Missouri v. Seibert*, 542 U.S. 600, 608-09 (2004); *Dickerson*, 530 U.S. at 433.

Generally, if a search or seizure is not conducted in compliance with constitutional requirements, evidence obtained as a result of the search/seizure must be suppressed. *See United States v. Gross*, 550 F.3d 578, 583 (6th Cir. 2008) ("[E]vidence and statements obtained from [an] illegality must be excluded as 'fruit of the poisonous tree.'" (quoting *Wong Sun v. United States*, 371 U.S. 471, 488 (1963))). This remedy of evidence exclusion is a "judicial innovation," *United States v. Clariot*, 655 F.3d 550, 553 (6th Cir. 2011), to be used as a "last resort, not [a] first impulse," *Hudson v. Michigan*, 547 U.S. 586, 591 (2006).

Defendant, as the proponent of the motion to suppress, generally bears the burden of establishing his constitutional rights were violated. *See Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978) (citations omitted). It is the Government's burden, however, to demonstrate by a preponderance of the evidence that a particular search or seizure is constitutional. *See United States v. Baldwin*, 114 F. App'x 675, 681 (6th Cir. 2004) (citing *United States v. Winfrey*, 915 F.2d 212, 216 (6th Cir. 1990)).

### III. ANALYSIS

Defendant's initial argument, boiled down to its essence, was that suppression was required because Bain's alert did not provide the necessary probable cause for the vehicle search since Bain

---

[6] In *Miranda v. Arizona*, 384 U.S. 436 (1966), the United States Supreme Court held that certain warnings must be given before a suspect's statement made during custodial interrogation could be admitted into evidence. As to Defendant's confession he had marijuana in his vehicle, it is undisputed he was not given a *Miranda* warning.

7

was neither certified as a drug detection dog on the day of the sniff and alert nor shown to be reliable in the absence of training records.[7] In response, the Government initially relied solely on Bain's alert to establish probable cause for the search of the vehicle.[8] Given the evidence presented at the hearing, a significant germane issue became whether Defendant's constitutional rights were violated in the context of his admission that he had marijuana in his vehicle, which occurred prior to the search of his person and vehicle. Post hearing briefs addressed the parties'

---

[7] Based on previous filings in this case [Doc. 35 & Doc. 38] and the testimony, the NNDDA refused to provide training and certification records for Bain requested by Defendant absent a subpoena. The Government then subpoenaed the certification records, which consist of two pages with no detail about the number of training tests required or Bain's performance on those tests. At a minimum, it appears undisputed that the NNDDA did not issue a certification for the time period at issue. On the issue of Bain's training, Defendant also argues Bain's initial certification and training by NNDDA is lacking because: (1) as shown in a sampling of testing requirements for drug dog certification groups that compares test requirements for NNDDA with the North American Police Dog Work Association and the Dogs for Law Enforcement Association, NNDDA's testing only requires dogs to be able to alert on ten times the size of a drug sample used by the other testing agencies; (2) there is no indication Bain passed certification tests involving vehicles; (3) there is no indication Bain passed certification tests involving distractions, such as Defendant's aggressively barking dog; and (4) the record is devoid of documents regarding where and when Brisher and Bain were initially trained and whether they received additional training beyond the initial, expired 2019 certification. For the reasons set forth herein, I find it is not necessary to address these arguments further.

[8] The Government bears the burden of proof regarding Bain and Brisher's canine training and reliability. *See, e.g., United States v. Nance*, No. 3:09-CR-163, 2010 WL 4004782, at *16 (E.D. Tenn. Sept. 17, 2010) (citing *United States v. Diaz,* 25 F.3d 392, 394 (6th Cir. 1994) (holding that "[f]or a positive dog reaction to support a determination of probable cause, the training and reliability of the dog must be established")), *report and recommendation adopted*, 2010 WL 3999130 (E.D. Tenn. Oct. 12, 2010); *United States v. Huerta,* 247 F.Supp.2d 902, 907-08 (S.D. Ohio 2002) (placing the burden of proving a drug dog's training and reliability on the Government and applying a "preponderance of the evidence" standard); *United States v. Lambert,* 351 F.Supp.2d 1154, 1162 (D. Kan. 2004) (holding that in "proving probable cause to search the defendant's pickup, the Government must prove that the dog was trained and certified at the time of the alert"); *United States v. Neatherlin,* 66 F. Supp. 2d 1157, 1161 (D. Mont. 1999) (finding that the Government has the burden of proving a drug dog's reliability). Again, for the reasons set forth herein, I also find it is not necessary to address arguments regarding the reliability of Bain's alert further.

arguments regarding this, more pertinent, issue.

In his post-hearing brief, Defendant claims Brisher's statement that Bain alerted on Defendant's car and his un-Mirandized questions to Defendant about having anything illegal in the car violated his Fifth Amendment rights. Arguing the questioning was unlawful custodial interrogation, he contends his confession to having marijuana in the car cannot be used to support probable cause for the vehicle search. The Government asserts this interaction between Defendant and Brisher was not a custodial interrogation under the reasoning of *Berkemer v. McCarty*, 468 U.S. 420, 441-42 (1984) (holding a traffic stop is like a *Terry* stop and does not automatically satisfy custodial interrogation and implicate *Miranda*) and its progeny. I conclude the Government has the convincing argument. Moreover, the admission, even standing alone, provided ample probable cause for the search of Defendant's person and the vehicle.

As a preliminary matter, investigatory traffic stops are lawful under the Fourth Amendment if the officers have probable cause to believe that a traffic violation has occurred. *United States v. Davis*, 430 F.3d 345, 352 (6th Cir. 2005). However, the traffic stop must be carefully limited in both scope and duration. *See United States v. Lott*, 954 F.3d 919, 923 (6th Cir. 2020) (citations omitted). In a lawful stop, "the Fourth Amendment tolerate[s] certain unrelated investigations that d[o] not lengthen the roadside detention" of traffic stops." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015). Such unrelated investigations include questioning and dog sniffs. *Id*. at 354-55. However, "a traffic stop 'can become unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' of issuing a warning ticket." *Id*. (alteration in original) (quoting *Caballes*, 543 U.S. at 407). In addition to determining whether to issue a ticket, an officer's "mission" during a traffic stop includes "ordinary inquiries incident to the traffic stop," such as "checking the driver's license, determining whether there are outstanding warrants against

9

the driver, and inspecting the automobile's registration and proof of insurance." *Id*. at 355 (cleaned up). *See also United States v. Whitley*, 34 F.4th 522, 529 (6th Cir. 2022). Defendant has not argued the stop, its scope, or its duration were unlawful in any way.

Turning to Defendant's admission that he had an illegal drug in his vehicle, *Miranda*'s procedural safeguards apply to suspects only if they are subjected to a custodial interrogation, but regardless of whether formal criminal proceedings have begun. *United States v. Ray*, 803 F.3d 244, 266 n.12 (6th Cir. 2015). If an individual in custody and subject to police interrogation is not given *Miranda* warnings, the issue of voluntariness is never reached. If an individual in custody makes unwarned statements in response to interrogation, such statements must be suppressed.[9] *Dickerson,* 530 U.S. at 443-44 (holding *Miranda* warnings are constitutionally required before the government can admit into its case-in-chief statements made during custodial interrogation); *Tolliver v. Sheets*, 594 F.3d 900, 917 (6th Cir. 2010) ("In 2000, the [*Dickerson*] Court reaffirmed the rule that the prosecution may not use statements obtained through custodial interrogation in the absence of the specific rendering of the *Miranda* warning.").

"A suspect is in 'custody' for *Miranda* purposes if there has been a 'formal arrest or restraint on freedom of movement.'" *Ray*, 803 F.3d at 266 n.12 (quoting *Mason v. Mitchell*, 320 F.3d 604, 631 (6th Cir. 2003)); *see also United States v. Malcolm*, 435 F. App'x 417, 420 (6th Cir. 2011) (holding that *Miranda* "only applies 'where there has been such a restriction on a person's freedom as to render him in custody.'" (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977))).

---

[9] There are some exceptions to this rule; and one is the exception for public safety. *New York v. Quarles,* 467 U.S. 649, 655-56 (1984) ("We hold that on these facts there is a 'public safety' exception to the requirement that *Miranda* warnings be given before a suspect's answers may be admitted into evidence, and that the availability of that exception does not depend upon the motivation of the individual officers involved."). Given my findings, however, it is not necessary to address the Government's passing public safety exception argument, which was only raised in its final brief.

Thus, the pertinent issue is whether Defendant was "in custody" for purposes of *Miranda* when questioned about whether he had anything illegal in his vehicle during the otherwise entirely lawful traffic stop.

Typically:

> Whether a suspect is "in custody" is an objective determination that requires two discrete inquiries: "first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was at liberty to terminate the interrogation and leave." *Thompson v. Keohane*, 516 U.S. 99, 112 (1995) (footnote omitted). Both police and courts must "examine all of the circumstances surrounding the interrogation," including those that may affect how a reasonable person in the suspect's position would perceive his freedom to leave. *Stansbury v. California*, 511 U.S. 318, 322, 325 (1994). But the test does not involve consideration of the suspect's "actual mindset." *Yarborough v. Alvarado*, 541 U.S. 652, 667 (2004).

*Ray*, 803 F.3d at 266 n.12.

There are degrees of detention. *See generally United States v. Jones*, 673 F.3d 497, 503 (6th Cir. 2012) (citing *United States v. Smith*, 594 F.3d 530, 535 (6th Cir. 2010)) (listing three levels of detention). "In a *Terry* stop, officers may briefly detain a person for investigative purposes so long as it is 'reasonable.'" *United States v. Young*, 707 F.3d 598, 603 (6th Cir. 2012) (citing *Terry*, 392 U.S. at 20-22). When a person is not under arrest but is nonetheless subject to a detention pursuant to *Terry*, he is not entitled to *Miranda* warnings even though police engage in limited questioning. *Berkemer*, 468 U.S. at 439-41; *United States v. Swanson*, 341 F.3d 524, 528-29 (6th Cir. 2003) ("The very nature of a *Terry* stop means that a detainee is not free to leave during the investigation, yet is not entitled to *Miranda* rights."); *United States v. Thomas*, 142 F. App'x 896, 900 (6th Cir. 2005) (same).

As to unrelated questions posed during a traffic stop, the law is clear:

> A lawful roadside stop begins when a vehicle is pulled over

11

> for investigation of a traffic violation. The temporary seizure of driver and passengers ordinarily continues, and remains reasonable, for the duration of the stop. Normally, the stop ends when the police have no further need to control the scene, and inform the driver and passengers they are free to leave. An officer's inquiries into matters unrelated to the justification for the traffic stop, this Court has made plain, do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop.

*Arizona v. Johnson*, 555 U.S. 323, 333 (2009) (citations omitted).

To summarize, a routine, lawful traffic stop is not considered "custodial" such that a *Miranda* warning must be given to a suspect prior to asking him questions. *See Berkermer* 468 U.S. at 439-40. There are instances, however, where a roadside interrogation can become "custodial" such that *Miranda* warnings are required before interrogation takes place. *Id.* The Court of Appeals for the Sixth Circuit looks to "the totality of the circumstances to determine how a reasonable man in the suspect's position would have understood the situation," with the "ultimate inquiry" focused on "whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *Swanson*, 341 F.3d at 528-29 (quotation marks and citations omitted). Relevant considerations include: (1) the purpose of the questioning; (2) whether the place of the questioning was hostile or coercive; (3) the length of the questioning; and (4) other indicia of custody such as whether the suspect was informed at the time that the questioning was voluntary or that the suspect was free to leave or to request the officers to do so; whether the suspect possessed unrestrained freedom of movement during questioning; and whether the suspect initiated contact with the police or acquiesced to their requests to answer some questions. *United States v. Hinojosa*, 606 F.3d 875, 883 (6th Cir. 2010). Courts must "'examine all of the circumstances surrounding the interrogation,' including those that may affect how a reasonable person in the suspect's position would perceive his freedom to leave." *Ray*, 803

12

F.3d at 266 n.12 (quoting *Stansbury* 511 U.S. at 322). Like many suppression issues, the overarching inquiry is one of reasonableness.

As to the first factor, the purpose of the questioning about anything illegal in the vehicle, Brisher was giving Defendant an opportunity to dispel his suspicion that there was something amiss. Even if Brisher was suspicious based on Bain's alert and Defendant's nervousness, and even if these suspicions did not constitute probable cause standing alone or together, this type of limited investigatory questioning is permissible in a *Terry* traffic stop. *See Berkermer*, 468 U.S. at 423 (officer permissibly asked defendant whether he had been using intoxicants). It is permissible for officers to "quickly confirm or dispel . . . suspicion of criminal activity," as Brisher did here by asking about any illegal items in Defendant's vehicle while another officer completed tasks related to the traffic violation. *See United States v. Wright*, 220 F. App'x 417, 420 (6th Cir. 2007) ("Questions that hold potential for detecting crime, yet create little or no inconvenience, do not turn reasonable detention into unreasonable detention." (quoting *United States v. Burton*, 334 F.3d 514, 518 (6th Cir.2003))).

As to the second factor, whether the place of the questioning was hostile or coercive, the place of the questioning was the side of the road and Brisher was cordial in his interaction. While there were two officers present at the scene, there was no coercion and the other officer was checking Defendant's records with dispatch while Brisher spoke to Defendant. Stops that take place in public locations weigh in favor of being deemed non-custodial. *See Berkermer*, 468 U.S. at 438 (observing that "the typical traffic stop is public" and, thus, non-custodial); *Wright*, 220 F. App'x at 421 (interrogation near apartment complex found non-custodial); *Swanson*, 341 F.3d at 529 (interrogation outside shop found non-custodial); *United States v. Salvo*, 133 F.3d 943 (6th Cir. 1998) (interrogation in parking lot of restaurant found non-custodial). Even traffic stops

13

where the defendant is questioned inside an officer's police car have been found non-custodial. *Thomas*, 142 F. App'x at 899-900; *see also California v. Beheler,* 463 U.S. 1121, 1125–26 (1983) (detainee not "in custody" although questioning took place in a police station). The Sixth Circuit has even observed that a custodial interrogation does not result merely because police questioning occurs during a pat down. *See Loza v. Mitchell*, 766 F.3d 466, 476-77 (6th Cir. 2014). Moreover, no weapons were drawn and Defendant was not in handcuffs further indicating the non-custodial nature of the interrogation. *See Thomas*, 142 F. App'x at 899-900 (finding lack of handcuffs to weigh against a finding of custody); *United States v. Mitchell*, 161 F. App'x 537, 540 (6th Cir. 2006) (finding lack of weapons drawn to weigh against a finding of custody).

As to the third factor, the length of questioning, the questioning was quite short and took place before the purposes of the traffic stop were concluded. Short interrogations are less coercive and weigh in favor of being found non-custodial. *United States v. Panak*, 552 F.3d 462, 466-67 (6th Cir. 2009). The quick questions asked here took place in a far shorter time than in other cases in this circuit finding an interrogation to be non-custodial. *See id.* (finding interrogation lasting between forty-five minutes to an hour non-custodial); *United States v. Crossley*, 224 F.3d 847, 862 (6th Cir. 2000) (finding interrogation less than one hour non-custodial); *Wright*, 220 F. App'x at 421 (finding fifteen-minute interrogation non-custodial).

Defendant stresses that he was not free to leave the scene of the traffic stop. However, as noted above, a person is generally not legally free to leave in the context of a *Terry*-style traffic stop, at least temporarily. *See Thomas*, 142 F. App'x at 899-900. Thus, while this fact has also been considered in Defendant's favor, it cannot be dispositive. If it were, it would logically follow that every *Terry*-style traffic stop where the police ask questions would require *Miranda* warnings. The Supreme Court has decided to the contrary. *Berkemer*, 468 U.S. at 439-40.

14

I find the time, place, and manner of questioning in this case are substantially less coercive or hostile than in other cases that have held a detainee was not entitled to a *Miranda* warning. *See e.g., Beheler*, 463 U.S. at 1125-26. This case involves a routine, lawful traffic stop akin to a *Terry* stop where officers may briefly detain a person for investigative purposes on the basis of reasonable suspicion. *See Young*, 707 F.3d at 603. During the traffic stop, Brisher was permitted to ask Defendant a moderate number of questions to try and obtain information to confirm or dispel his suspicions. *See Thomas*, 142 F. App'x at 899-900. During this period, Defendant was neither free to leave nor entitled to a *Miranda* warning. *See id.* (holding "the very nature of a *Terry* stop means that a detainee is not free to leave during the investigation, yet is not entitled to *Miranda* rights.").

Assessing all the above factors, Defendant's stop did not cross the line between a *Terry* stop and a custodial arrest such that *Miranda* warnings would be necessary before interrogation. Moreover, under the credible facts in this case, the purpose of the traffic stop was not completed before Defendant admitted his vehicle contained marijuana.[10] Accordingly, I **FIND** Brisher's questioning, including his statement that Bain alerted on the vehicle, was not a custodial interrogation that required a *Miranda* warning and waiver. The cases cited by Defendant are easily distinguished for the reasons stated in the Government's response, which need not be repeated herein.

Since Defendant's admission that he had marijuana in the vehicle was lawfully obtained,

---

[10] As noted, Defendant has not disputed that the initial traffic stop or the scope and duration of the stop were lawful. It is also well recognized that a timely dog sniff of the exterior of a lawfully stopped vehicle does not violate the Fourth Amendment. *See, e.g., Caballes,* 543 U.S. at 409-10.

15

it provided abundant probable cause for the search of his person[11] and vehicle based upon the fair probability that contraband or evidence of a crime would be found in the vehicle even without consideration of any evidence concerning Bain's alert, certification, and training. *See Johnson*, 707 F.3d at 658 (finding probable cause for vehicle search where defendant voluntarily informed officer he was a convicted felon in possession of a firearm); *Burton*, 334 F.3d at 519 (finding probable cause for arrest where defendant admitted carrying a firearm during a traffic stop, noting: "Admissions of crime, like admissions against proprietary interests, carry their own indicia of credibility-sufficient at least to support a finding of probable cause to search." (quoting *United States v. Harris*, 403 U.S. 573, 583)). Defendant does not argue otherwise; instead, as noted, he only contends his admission was unlawfully obtained because he was subjected to custodial interrogation without the benefit of a *Miranda* warning, an argument I recommend rejecting.[12]

As for the warrantless search of the automobile, the Supreme Court has long recognized that some circumstances obviate the need for a warrant provided the search is otherwise reasonable. *See Carroll v. United States*, 267 U.S. 132, 153 (1925); *United States v. Wilson*, No.

---

[11] Defendant has not specifically argued the search of his person should be suppressed on any basis other than his overarching claim that he was subjected to custodial interrogation without the benefit of a *Miranda* warning. However, it is not necessary to include in the probable cause analysis for the vehicle search that baggies of methamphetamine were found on Defendant's person prior to the automobile search because his non-custodial admission alone constitutes sufficient probable cause for the vehicle search as detailed herein.

[12] Moreover, even if Brisher knew that Bain was no longer certified during the stop and questioning, which has not been argued or proven, the utilization of misrepresentations by police officers during an interrogation does not render an otherwise voluntary confession invalid. *See Robinson v. Skipper*, No. 19-1907, 2020 WL 4728087, at *2 (6th Cir. July 13, 2020) (police officer's misrepresentation to the defendant that two other suspects had implicated him in the victim's murder would not render confession involuntary); *Ledbetter v. Edwards*, 35 F.3d 1062, 1067 (6th Cir. 1994) (despite police officer's misrepresentations that the defendant's fingerprint was found at the crime scene and that two witnesses identified the defendant, the defendant's confession was valid because he was not coerced to confess).

22-1587, 2023 WL 3886406, at *2 (6th Cir. June 8, 2023). Under the "automobile exception," law enforcement officers may conduct a warrantless search of a vehicle if they have probable cause to believe that the vehicle contains evidence of a crime. *Hernandez v. Boles*, 949 F.3d 251, 259 (6th Cir. 2020). Probable cause exists if, under the totality of the circumstances, there is a "fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

The Sixth Circuit has repeatedly held that an officer's detection of even just the odor of "marijuana in an automobile can by itself establish probable cause for a search." *United States v. Grayer*, No. 20-5842, 2021 WL 3813198 at *3 (6th Cir. Aug. 26, 2021) (quoting *United States v. Elkins*, 300 F.3d 638, 659 (6th Cir. 2002)). Here, there was far more than a mere odor—there was an admission the car contained marijuana. Accordingly, even without determining the reliability of Bain's alert or taking it into consideration, the vehicle search was reasonable and supported by probable cause to believe Defendant's vehicle would contain evidence of a crime—marijuana possession—based on Defendant's lawfully obtained admission. It is not necessary or efficient to address the myriad of other potential issues raised in the suppression briefs.

Accordingly, applying a probable cause standard under the totality of the circumstances, I **FIND** the search of Defendant's person and the automobile without a warrant or consent were proper given Defendant's admission standing alone.

## IV. CONCLUSION

For the reasons stated above, I **RECOMMEND**[13] that Defendant's motion to suppress [Doc. 45] be **DENIED**.

**ENTER**:         s/ *Susan K. Lee*
               SUSAN K. LEE
               UNITED STATES MAGISTRATE JUDGE

---

[13] Any objections to this report and recommendation must be served and filed within 14 days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 59(b) of the Federal Rules of Criminal Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, or general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).