UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | Case No. 4:22-cr-23 |
| v. | ) | |
| | ) | Judge Travis R. McDonough |
| DAVID CROCKETT HAVNER | ) | |
| | ) | Magistrate Judge Susan K. Lee |

**MEMORANDUM AND ORDER**

On May 2, 2023, Defendant David Crockett Havner filed a motion to suppress (Doc. 45)[1] "all evidence seized and statements made during the March 4, 2022, traffic stop of his vehicle." (*See id.* at 2.) The Government responded (Doc. 47), and United States Magistrate Judge Susan K. Lee held a hearing on the motion on May 17, 2023. (Docs. 46, 51.) On June 20, 2023, Judge Lee entered a report and recommendation recommending that the Court deny the motion to suppress. (Doc. 60.) Havner objected. (Doc. 64.) For the reasons set forth below, the Court will **OVERRULE** Havner's objections (Doc. 64) **ACCEPT** and **ADOPT** the report and recommendation (Doc. 60) and will **DENY** Havner's motion to suppress (Doc. 45). The trial date and other relevant deadlines will be **RESET**.

**I.  BACKGROUND**[2]

On March 4, 2022, Officer Brishner pulled Havner over because he was not wearing a seat belt. (Doc. 45, at 7.) During the stop, Officer Brishner thought Havner seemed nervous and

---

[1] During the pendency of this motion to suppress, all deadlines and dates in this matter were stayed. (Doc. 44.)

[2] Because Havner objects to certain factual findings made by Magistrate Judge Lee in her report and recommendation, the Court will set forth a brief summary of the traffic stop underlying the motion to suppress.

asked Havner if he could search his vehicle. (*Id.*) Havner declined. (*Id.*) Officer Brishner then deployed K9 Bain ("Bain"), who circled Havner's vehicle and performed an "open air sniff." (*Id.*) At some point before deploying Bain, Officer Brishner handed Havner's driver's license to another officer on the scene to run his information through Marion County dispatch. (Doc. 53, at 53.) When Bain arrived at the rear passenger side of Havner's car and moved closer to the door seam, he alerted. (Doc. 45, at 7.) Officer Brishner then asked Havner if he had anything illegal in the car, and Havner disclosed that he possessed a few jars of marijuana. (*Id.*) After conducting a search of Havner's person and vehicle, Officer Brishner located a "crystal-like substance believed to be meth," "marijuana in several different containers," and "a 380 cal[iber] Bodyguard Smith & Wesson Pistol." (*Id.*)

On July 26, 2022, a grand jury returned a three-count indictment against Havner, charging him with the following: Count One, knowingly possessing a firearm after having been convicted of a felony, in violation of Title 18, United States Code, Section 922(g)(1); Count Two, knowingly and intentionally possessing with intent to distribute methamphetamine, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C); and Count Three, knowingly possessing a firearm in furtherance of a federally-prosecutable drug trafficking crime, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i). (Doc. 1, at 1–2.) On May 2, 2023, Havner filed a motion to suppress all evidence seized and statements made during a traffic stop of his vehicle on March 4, 2022. (Doc. 45, at 2.) In that motion, Havner primarily argues that Bain was not certified at the time of the stop. (*Id.*) As a result, he contends that the alleged alert could not have supplied probable cause to search his vehicle. (*Id.*)

On May 17, 2023, Magistrate Judge Lee held an evidentiary hearing on Havner's motion to suppress. (*See* Doc. 46.) At the evidentiary hearing, Judge Lee heard testimony from former

12th and 31st Judicial District Drug and Violent Crime Task Force ("DTF") agent Dustin Brishner ("Officer Brishner"), current DTF director Chad Johnson, and Federal Defender Services of East Tennessee ("FDSET") investigator William Dippillo. (Doc. 60, at 1–2.) On June 20, 2023, Judge Lee issued a report and recommendation on Havner's motion to suppress, recommending that the undersigned deny the motion. (Doc. 60, at 18.) Multiple deadline extensions later, Havner filed objections to Judge Lee's report and recommendation. (*See* Docs. 61, 63, 64.) The Government responded to the objections. (Doc. 66.) Havner's objections are now ripe for review.

## II. STANDARD OF REVIEW

This Court must conduct a *de novo* review of those portions of the report and recommendation to which objections are made. 28 U.S.C. § 636(b)(1)(C). *De novo* review does not, however, require the district court to rehear witnesses whose testimony has been evaluated by the magistrate judge. *See United States v. Raddatz*, 447 U.S. 667, 675–76 (1980). The magistrate judge, as the factfinder, has the opportunity to observe and to hear the witnesses and to assess their demeanor, putting him in the best position to determine credibility. *Moss v. Hofbauer*, 286 F.3d 851, 868 (6th Cir. 2002); *United States v. Hill*, 195 F.3d 258, 264–65 (6th Cir. 1999). A magistrate judge's assessment of witnesses' testimony is, therefore, entitled to deference. *United States v. Irorere*, 69 F. App'x 231, 236 (6th Cir. 2003); *see also United States v. Navarro-Camacho*, 186 F.3d 701, 705 (6th Cir. 1999).

Although the Court is required to engage in a *de novo* review of specific objections, if the objections merely restate the arguments asserted in a defendant's earlier motion, which were addressed by the magistrate judge's report and recommendation, the Court may deem those objections waived. *See VanDiver v. Martin*, 304 F. Supp. 2d 934, 937 (E.D. Mich. 2004). "An

'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context." *Id.*

### III. ANALYSIS

Though Havner's motion to suppress focused on Bain's certification status, his report-and-recommendation objections center instead on whether he was subjected to a custodial interrogation when questioned by Officer Brishner during the stop.[3] Specifically, Havner challenges Judge Lee's application of the factors set forth in *United States v. Hinojosa*, 606 F.3d 875, 883 (6th Cir. 2010),[4] when determining Havner was not subject to custodial interrogation and thus was not entitled to a *Miranda* warning. (*See* Doc. 60, at 12.) In his objections, Havner focuses on three of the *Hinojosa* factors: (1) the length of questioning; (2) restriction of movement; and (3) initiation of contact with the police. (*See* Doc. 64.)

As Judge Lee laid out in her report, a suspect subject to custodial interrogation—as determined by evaluation of the *Hinojosa* factors—must be given a *Miranda* warning against self-incrimination. (Doc. 60, at 6 (citing *Dickerson v. United States*, 530 U.S. 428, 431 (2000).)

---

[3] Judge Lee discusses this shift in her report, noting that "a significant germane issue" based on the evidence presented at the motion-to-suppress hearing was "whether Defendant's constitutional rights were violated in the context of his admission that he had marijuana in his vehicle, which occurred prior to the search of his person and vehicle." (Doc. 60, at 8.)

[4] The *Hinojosa* factors are as follows: "(1) the location of the interview; (2) the length and manner of the questioning; (3) whether there was any restraint on the individual's freedom of movement; and (4) whether the individual was told that he or she did not need to answer the questions." *United States v. Martinez*, 795 F. App'x 367, 371 (6th Cir. 2019) (quoting *Hinojosa*, 606 F.3d at 883). The Sixth Circuit has noted that the "list is not exhaustive, and no single factor is determinative." *Id.* (citing *United States v. Swanson*, 341 F.3d 524, 528 (6th Cir. 2003)). Rather, a court is to weigh the factors to determine if they favor a finding of custody. *Id.*

If no *Miranda* warning is administered, the government is barred from introducing the suspect's incriminating statements at trial. (*Id.* (citing *Dickerson*, 530 U.S. at 431))  The relevant question is thus whether Havner was in custody at the time Officer Brishner asked him whether he possessed any illegal substances, at which time Havner had not been read his *Miranda* rights.  If the answer is in the affirmative, Havner's incriminating statements would not be admissible against him.

Havner first objects to Judge Lee's finding that Officer Brishner's questioning was short and occurred "before the purposes of the traffic stop were concluded." (Doc. 64, at 2 (quoting Doc. 60, at 14).)  Though Havner points out that his information was sent to dispatch only three minutes after the stop's initiation, the record does not indicate when dispatch confirmed the information.  After pulling over Haver but before deploying Bain, Officer Brishner passed Havner's driver's license to another officer so he could "verify[ ] his identity." (Doc. 53, at 53–54.)  As Judge Lee noted at the suppression hearing, "[t]he evidence is that all this [referring to the drug sniff and subsequent questioning] took place while they were waiting for the record check to come back." (*Id.* at 108.)  Additionally, the entirety of the encounter lasted well under an hour, and the Sixth Circuit has held stops of similar length to be non-custodial. *See, e.g.*, *United States v. Slone*, No. CRIM. 12-5, 2013 WL 3799419, at *5 (E.D. Ky. July 19, 2013) (noting that an interview lasting "no more than one hour" was "consisted with the length of other noncustodial interviews") (collecting Sixth Circuit cases).  Therefore, the Court agrees with Judge Lee that this factor does not suggest Havner was in custody at the time Officer Brishner questioned him about illegal substances.

Havner next objects to Judge Lee's conclusions regarding restrictions on Havner's freedom of movement during the stop and disagrees with her characterization of Officer

5

Brishner's interaction with Havner as "cordial." (Doc. 64, at 2.) Havner points out that he was directed to exit his vehicle and was never assured that he was not under arrest or that he did not have to answer any questions. (*Id.*) But, as Judge Lee notes, the stop occurred in a public location, no weapons were drawn or force applied during the encounter, and Havner was not in handcuffs prior to the discovery of drugs. (Doc. 60, at 13–14.) At the suppression hearing, Officer Brishner testified that there were "no issues at all" when he asked Havner to exit the vehicle, and that he "informed [Havner] that he would not be receiving a citation as long as all of his driver's license information checked out to be okay" in order to "calm him [] based off his nervousness." (Doc. 53, at 9, 53.) Though every *Terry* stop entails some restriction of movement, the Court agrees with Judge Lee that Havner's traffic stop "did not cross the line between a *Terry* stop and a custodial arrest such that *Miranda* warnings would be necessary before interrogation." (*Id.* at 15.)

Third, Havner argues he never initiated contact with Officer Brishner or voluntarily answered questions. (Doc. 64, at 4.) But the record suggests that the encounter was, as Judge Lee observed, "a routine, lawful traffic stop akin to a *Terry* stop where officers may briefly detain a person for investigative purposes on the basis of reasonable suspicion." (Doc. 60, at 15 (citation omitted).) A suspect can be required to remain in place and answer a law enforcement officer's questions during a traffic stop without being entitled to *Miranda* rights; to hold otherwise would untenably escalate every traffic stop to a custodial arrest. *See United States v. Thomas*, 142 F. App'x 896, 900 (6th Cir. 2005) ("[T]he very nature of a Terry stop means that a detainee is not free to leave during the investigation, yet is not entitled to *Miranda* rights.").

Based on its evaluation of the *Hinojosa* factors, the Court finds that Judge Lee correctly determined that Havner was not in custody at the time Officer Brishner questioned him about

6

illegal substances, and, therefore, was not entitled to receive *Miranda* warnings. (*See* Doc. 60.) Given that finding, Havner's admission that he possessed drugs served as probable cause to search his person and the vehicle.

## IV. CONCLUSION

For the reasons stated herein, Havner's objections to the report and recommendation (Doc. 64) are **OVERRULED**. The Court **ACCEPTS** and **ADOPTS IN PART** Judge Lee's report and recommendation (Doc. 60) and **DENIES** Havner's motion to suppress (Doc. 45). The following new trial schedule is **ORDERED**:

1. Plea Bargaining shall be concluded by **September 25, 2023**, and any written agreement shall be executed by said date.

2. All motions shall be filed no later than **September 25, 2023**.

3. All requests for jury instructions shall be submitted no later than **October 10, 2023**. The parties shall confer and submit a joint proposal for jury instructions. Before submitting the joint proposal to the Court, the parties must attempt to resolve any disagreements. To the extent there are disagreements as to specific instructions that cannot be resolved, the parties should provide competing instructions in their joint proposal. All jury instructions in the joint proposal, including agreed instructions and competing instructions, shall be supported by citations of authority. A copy of the proposed jury instructions should be sent in Microsoft Word format to **mcdonough_chambers@tned.uscourts.gov**.

4. A final pretrial conference shall be held before the United States District Judge at **3:00 p.m.** on **October 10, 2023**, in Chattanooga, Tennessee. At or before the final pretrial conference, all parties shall provide a notebook to the Court with exhibits they expect to offer during their cases-in-chief. Each party should also file a written submission advising the Court:

(1) how and by whom each document will be authenticated, and (2) the theory of admissibility for the document, with appropriate references to the Federal Rules of Evidence. At the final pretrial conference, the parties should also be prepared to advise the Court whether they intend to offer any out-of-court statements as evidence beyond what is reflected in the exhibit notebook and be prepared to explain why each statement is not barred by the rule against hearsay, the Confrontation Clause, or any other basis. The parties should also be prepared to discuss evidence relating to a crime, wrong, or other act by the defendant(s), whether that evidence is admissible under Federal Rule of Evidence 404(b)(2), and whether the Government has given appropriate notice. The parties shall also disclose to one another and to the Court the technology they intend to use in the courtroom during the trial and how they intend to use it (e.g., display equipment, data storage, retrieval, or presentation devices). This disclosure shall list: (1) the equipment the parties intend to bring into the courtroom to use and (2) the equipment supplied by the Court the parties intend to use. Further, the parties shall disclose to one another the content of their electronic or digital materials by the time of the final pretrial conference and shall confirm the compatibility/viability of their planned use of technology with the Court's equipment by the final pretrial conference. General information regarding equipment supplied by the Court is available on the Eastern District of Tennessee website (**www.tned.uscourts.gov**). Specific questions about Court-supplied equipment should be directed to the courtroom deputy (directory available on website).

5. The trial of this case will be held before the United States District Judge and a twelve-person jury beginning on **October 16, 2023, at 9:00 a.m.** in Chattanooga, Tennessee. If this case is not heard immediately, it will be held in line until the following day or any time during the week of the scheduled trial date.

**SO ORDERED.**

/s/*Travis R. McDonough*
**TRAVIS R. MCDONOUGH
UNITED STATES DISTRICT JUDGE**